## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **GREGORY TOTTEN,** | |
| **Plaintiff,** | |
| v. | **Civil Action No.  04-2058 (JDB)** |
| **GALE A. NORTON, SECRETARY, UNITED STATES DEPARTMENT OF THE INTERIOR,** | |
| **Defendant.** | |

## <u>MEMORANDUM OPINION</u>

This case is before the Court on plaintiff Gregory Totten's complaint that he suffered a discriminatory reprisal under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-16, while working for the United States Department of the Interior.  In addition to the reprisal claim, plaintiff contends that he is entitled to recover damages from the agency based on three tort theories: negligence, negligent supervision, and intentional infliction of emotional distress.  Defendant has filed a motion to dismiss the claims or, in the alternative, for summary judgment.  For the reasons set forth below, the Court concludes that the government's motion to dismiss should be granted.

## BACKGROUND[1]

Plaintiff is an employee of the National Parks Service ("NPS"), which is a division of the

---

[1] The following facts are taken from plaintiff's complaint and plaintiff's opposition to defendant's motion to dismiss.  The Court assumes that the facts therein are true for purposes of resolving this motion to dismiss.

Department of the Interior.  On October 7, 1999, he was removed from his position as an

automotive worker at the NPS's Brentwood Maintenance Facility in Washington, D.C.  Totten

filed a formal complaint with the agency's Equal Employment Opportunity ("EEO") office,

alleging that he was discriminated against based upon a physical disability.  On October 23,

2000, the agency issued a final agency decision that concluded plaintiff had suffered unlawful

discrimination.

   During the period between plaintiff's removal and his eventual reinstatement -- i.e., while

he was not a federal employee -- plaintiff entered the Brentwood facility on at least two

occasions to see his former co-workers.  Following one of these visits, on August 15, 2001,

supervisors at the facility circulated a memorandum stating that, because plaintiff was not a

federal employee, he was not allowed on the Brentwood facility without prior approval from the

Branch Chief of Transportation.

   On September 10, 2001, Totten resumed work for the NPS and was assigned to the

George Washington Memorial Parkway.  Two months later, on November 7, 2001, plaintiff was

given the task of repairing a government vehicle.  He spoke to his supervisor, Mike Vidal, about

the need to create a custom-made panel for the vehicle.  Plaintiff believed that the necessary

technology to make the panel could be found at the Brentwood facility, and he told Mr. Vidal

that he would be willing to go to Brentwood to talk with one of his former supervisors, William

Newman, about the panel.  Mr. Vidal gave plaintiff permission to go to the Brentwood facility

but did not provide plaintiff with a work order or call ahead to alert the facility of plaintiff's

arrival and business purpose.  When plaintiff arrived at the Brentwood facility, he was driving a

government vehicle and wearing an NPS uniform.  Plaintiff told the security guard that he

wanted to speak with Mr. Newman, but did not tell the guard the purpose of his visit.

Mr. Newman was summoned, and he approached the security entrance.  Without speaking to plaintiff, Mr. Newman informed the guard that he had no knowledge of plaintiff's visit and that plaintiff was only to enter the facility with prior approval.  The guard put plaintiff on the phone with the guard's supervisor, who instructed plaintiff that if he did not leave the facility, the United States Park Police would be called and plaintiff would be arrested.  Plaintiff left the Brentwood facility without further incident.

Plaintiff commenced this civil action on November 26, 2004, alleging that his non-admittance to the Brentwood facility was a reprisal for earlier Title VII-protected activity.[2] Plaintiff claims that the embarrassment and humiliation he suffered when he was barred from the

---

[2] The frustratingly sparse record before the Court suggests that plaintiff's earlier EEO proceeding actually involved an asserted violation of the Rehabilitation Act, which prohibits federal agencies from basing personnel actions on certain disabilities, 29 U.S.C. § 701 et seq., rather than a complaint pursuant to Title VII, which forbids discrimination against federal employees "based on race, color, religion, sex, or national origin," 42 U.S.C. § 2000e-16.  See Compl. at ¶ 8 (stating that the underlying discrimination claim was based on defendant's failure to provide plaintiff with a "reasonable accommodation for a disability").  Nevertheless, defendant does not contest plaintiff's assertion that his earlier EEO activity based on disability discrimination constituted activity protected by *Title VII*'s anti-reprisal provision, 42 U.S.C. § 2000e-3(a) (prohibiting discrimination against an employee based on the fact that he or she "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]"), which applies to federal agencies through the language of 42 U.S.C. § 2000e-16, see Rochon v. Gonzales, No., 04-5278, slip op. at 7-8 (D.C. Cir. Feb. 28, 2006).  Although retaliation by a federal agency against an employee for the employee's pursuit of a disability-discrimination claim has been found to be actionable, the Court is unaware of any case explicitly holding that such conduct is actionable as a claim for reprisal discrimination *under Title VII*.  In any event, had plaintiff drafted his complaint to allege reprisal discrimination in violation of the Rehabilitation Act itself -- i.e., as a claim for relief under 29 U.S.C. § 791 instead of as a claim under 42 U.S.C. § 2000e-16 -- the analysis would be the same as for a Title VII reprisal action.  Because resolution of defendant's motion to dismiss does not turn on this aspect of plaintiff's pleading, the Court need not address the issue further in this case.  The remainder of the opinion will discuss the reprisal allegation as a Title VII claim, consistent with plaintiff's complaint and defendant's apparent concession.

Brentwood facility in front of his former co-workers caused him emotional distress and psychological damage. Plaintiff also alleges that the actions of the supervisors at the Brentwood facility amounted to tortious conduct.

## ANALYSIS

### I.   Reprisal Discrimination

Title VII requires, among other things, that federal government workplaces be free of discrimination on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-16(a). It also shields federal employees from reprisal actions by their employer by making it unlawful to discriminate against an employee because the employee "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a); Rochon, slip op. at 7-8 (concluding that section 2000e-3(a) applies to federal employment actions through the language of 42 U.S.C. § 2000e-16). Plaintiff claims that the events of November 7, 2001, constituted an unlawful reprisal action. Defendant, however, has moved to dismiss the claim on the ground that plaintiff has failed to state a claim upon which relief can be granted. See Fed. R. Civ. P. 12(b)(6).[3]

---

[3] Defendant also argues that plaintiff's reprisal claim was untimely. To preserve a claim of unlawful discrimination in connection with employment, a claimant must make an official complaint within forty-five days of the alleged discrimination. Park v. Howard Univ., 71 F.3d 904, 907 (D.C. Cir. 1995), cert. denied, 519 U.S. 811 (1996); 42 U.S.C. § 2000e-16(c); 29 C.F.R. § 1614.105(a). The forty-fifth day from November 7, 2001 -- the date of the incident at the Brentwood facility -- was December 22, 2001. Plaintiff did not formally contact an EEO counselor until January 9, 2002. Plaintiff, however, claims that he left a phone message with a counselor, whom he identifies as "Mel Reid," on or about November 9, 2001, and that he tried unsuccessfully to reach Mr. Reid by telephone on two subsequent occasions. Plaintiff also claims he went in person to the EEO office during the week of December 17, 2001, at which time he learned that Mr. Reid was away on vacation. Plaintiff asserts that he was told to speak with a counselor named Joy Harris, who was not available at that time. Plaintiff says he met with Ms. Harris later that week and that she scheduled an appointment with an EEO counselor for January

A.    **Standard of Review**

A motion to dismiss pursuant to Rule 12(b)(6) will not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Haynesworth v. Miller, 820 F.2d 1245, 1254 (D.C. Cir. 1987).  All that the Federal Rules of Civil Procedure require of a complaint is that it contain "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Dura Pharmaceuticals, Inc. v. Broudo, 125 S. Ct. 1627, 1634 (2005) (quoting Conley, 355 U.S. at 47).  "Given the Federal Rules' simplified standard for pleading, '[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'"  Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002) (quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)).

Under Rule 12(b)(6), the plaintiff's factual allegations must be presumed true and should be liberally construed in his or her favor.  Leatherman v. Tarrant County Narcotics and Coordination Unit, 507 U.S. 163, 164 (1993); Phillips v. Bureau of Prisons, 591 F.2d 966, 968 (D.C. Cir. 1979).  The plaintiff must be given every favorable inference that may be drawn from the allegations of fact.  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000).  Conclusory legal and factual allegations, however, need not be considered by the court.  Domen v. Nat'l Rehabilitation Hosp., 925 F.

---

9, 2002.  Because, as explained below, plaintiff's non-admittance into the Brentwood facility does not rise to the level of a retaliatory incident under Title VII -- and therefore plaintiff fails to state a claim upon which relief can be granted -- the Court need not decide whether plaintiff's attempts to contact the EEO office prior to the December 22 deadline were sufficient to constitute a timely filing or whether the deadline should be equitably tolled.

Supp. 830, 837 (D.D.C. 1996) (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).

**B.    Discussion**

To establish a *prima facie* case of reprisal discrimination under Title VII, a plaintiff must show that (1) he engaged in a protected activity, (2) was later subjected to an adverse action by his employer, and (3) that there was a causal connection between the two events.  Mitchell v. Baldridge, 759 F.2d 80, 86 (D.C. Cir. 1985); Childers v. Slater, 44 F. Supp. 2d 8, 18-19 (D.D.C. 1999).  If, based on the allegations in the complaint and drawing all inferences consistent with those allegations in plaintiff's favor, it appears beyond doubt that a Title VII reprisal plaintiff would be unable to satisfy one or more of these *prima facie* elements, then the Court must grant defendant's motion to dismiss.

Plaintiff contends that his non-admittance into the Brentwood facility constitutes retaliation for his 2000 EEOC complaint against the NPS.  But even if one assumes that the non-admittance was causally connected to that activity, plaintiff cannot prevail on his reprisal claim because he fails to allege that he suffered any actionable adverse action by his employer.

Although a Title VII reprisal plaintiff need not show that the alleged retaliation affected his pay or benefits -- in other words, an adverse action may involve something short of what ordinarily would be considered a "personnel action" (e.g., denial of promotion, discharge, salary reduction) -- a plaintiff nonetheless must point to an action that has "*materially* adverse consequences" for him.  Stewart v. Evans, 275 F.3d 1126, 1134 (D.C. Cir. 2002); see also Rochon, slip op. at 14 ("[M]ateriality is implicit in the term 'discriminate' as it is used in Title VII."); Brown v. Brody, 199 F.3d 446, 457 (1999) (plaintiff must demonstrate "materially adverse consequences ... such that a reasonable trier of fact could conclude that the plaintiff has

-6-

suffered objectively tangible harm").  Materially adverse consequences include those "affecting the terms, conditions or privileges of employment," Stewart, 275 F.3d at 1134, as well as those that fall short of ultimate employment decisions, see Rochon, slip op. at 15.[4]  The touchstone of materiality in this context, the D.C. Circuit has said, is whether the "employer's challenged action ... would have dissuaded a reasonable worker from making or supporting a charge of discrimination."  Id. at 14.

A single incidence of non-admittance to a federal facility such as that experienced by Totten does not rise to the requisite level of "materiality."  Plaintiff claims only that he suffered humiliation and embarrassment from being turned away from the Brentwood facility, and -- with no particularity -- that this personal slight led to emotional distress and psychological damage.  Courts in this Circuit, however, have held that purely psychic injuries such as embarrassment do not qualify as adverse actions for purposes of federal anti-discrimination statutes.  E.g., Stewart, 275 F.3d at 1136 ("[P]ublic humiliation or loss of reputation does not constitute an adverse employment action under Title VII."); Al-Mahdi v. D.C. Pub. Schs., No. 01-CV-1014, 2005 WL 3272075 at * 4 (D.D.C. Dec. 2, 2005) (humiliation alone does not rise to the level of an adverse

---

[4] In Rochon, the D.C. Circuit made clear that Title VII prohibits "retaliation that does not come in the form of a personnel action." Slip op. at 13.  In that case, a Federal Bureau of Investigation agent who had previously won a Title VII case against the Bureau claimed that the Bureau retaliated against him by not investigating a death threat made by a federal prison inmate against the agent and his family.  Id. at 2.  Although the alleged retaliation did not adversely affect the agent's employment, the court of appeals held that the failure to investigate could still support a claim of reprisal discrimination.  Id. at 15.  In doing so, however, the court emphasized that when an employee claims retaliation outside of the immediate employment relationship, the alleged adverse action must be "material" or "significant."  Id. at 14.  The Rochon court found that the alleged retaliation against the plaintiff, "to wit, the FBI's refusal to investigate, as it would ordinarily do for any member of the public, a death threat made … by a federal prison inmate, meets this threshold of significance."  Id. at 15.

employment action) (citing <u>Forkkio v. Powell</u>, 306 F.3d 1127, 1130-1131 (D.C. Cir. 2002));

<u>Childers</u>, 44 F. Supp. 2d at 19 ("Mere inconveniences ... will not rise to the level of adverse

action."); <u>see also</u> <u>Rochon</u>, slip op. at 14 ("[N]ot everything that makes an employee unhappy is

an actionable adverse action.") (quoting <u>Manning v. Metro. Life Ins. Co.</u>, 127 F.3d 686, 692 (8th

Cir. 1997)).  In short, even viewing the facts in the light most favorable to plaintiff, he is unable

to meet the requirement that the challenged action by his employer would dissuade a reasonable

worker from making or supporting a charge of discrimination.  Hence, he has failed to allege

facts sufficient to support one element of a *prima facie* case of retaliation.  For this reason, he has

failed to state a claim for which relief could be granted, and the Court will grant defendant's

motion to dismiss the retaliation claim.

## II.     Tort Claims

Plaintiff also advances three claims sounding in tort that arise out of the same set of

events.  First, he asserts a claim of "negligence," as to which he contends that defendant had a

duty to permit him, as an NPS employee, to enter the Brentwood facility and that, as a result of

defendant's breach of that alleged duty (i.e., the refusal to allow him into the facility), plaintiff

suffered emotional distress and psychological damage.  Second, plaintiff claims that defendant is

liable for "negligent supervision" because defendant knew or should have known about the

possibility of reprisal and did not take steps to prevent the confrontation that occurred at his

former workplace.  Third, plaintiff makes a claim of intentional infliction of emotional distress,

alleging that defendant's actions were intentional and caused him an extreme amount of

emotional anguish, psychological distress, embarrassment, and humiliation.  Defendant has

moved to dismiss these claims on the ground that the Court lacks subject-matter jurisdiction

because plaintiff failed to exhaust his administrative remedies.  See Fed. R. Civ. P. 12(b)(1).

### A.    Standard of Review

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, the plaintiff bears the

burden of establishing that the court has jurisdiction.  Grand Lodge of Fraternal Order of Police

v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001) (a court has an "affirmative obligation to ensure

that it is acting within the scope of its jurisdictional authority"); see also Pitney Bowes, Inc. v.

United States Postal Serv., 27 F. Supp. 2d 15, 18 (D.D.C. 1998).  Although a court must accept

as true all the factual allegations contained in the complaint when reviewing a motion to dismiss

pursuant to Rule 12(b)(1), see Leatherman, 507 U.S. at 164, the court need not accept legal

conclusions as true,  Boyd v. O'Neill, 273 F. Supp. 2d 92, 95 (D.D.C. 2003).  Furthermore,

"'plaintiff[s'] factual allegations in the complaint ... will bear closer scrutiny in resolving a

12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim."  Grand Lodge,

185 F. Supp. 2d at 13-14 (quoting 5A Charles Alan Wright & Arthur R. Miller, Federal Practice

and Procedure § 1350).  A court may consider material other than the allegations of the

complaint in determining whether it has jurisdiction to hear the case.  See Coalition for

Underground Expansion v. Mineta, 333 F.3d 193, 198 (D.C. Cir. 2003); EEOC v. St. Francis

Xavier Parochial Sch., 117 F.3d 621, 624-25 n.3 (D.C. Cir. 1997); Hohri v. United States, 782

F.2d 227, 241 (D.C. Cir. 1986).  Thus, "where necessary, the court may consider the complaint

supplemented by undisputed facts evidenced in the record."  Coalition for Underground

Expansion, 333 F.3d at 198 (quoting Herbert v. Nat'l Acad. of Scis., 974 F.2d 192, 197 (D.C.

Cir.1992)).  Accordingly, an independent inquiry may be undertaken by the court to assure itself

of its own subject matter jurisdiction without triggering unnecessary discovery or converting the

motion to one for summary judgment pursuant to Rule 56.  Haase v. Sessions, 835 F.2d 902, 907-08 (D.C. Cir. 1987).

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) should not prevail "unless plaintiffs can prove no set of facts in support of their claim which would entitle them to relief."  Kowal v. MCI Commun. Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994); Beverly Enters., Inc. v. Herman, 50 F. Supp. 2d 7, 11 (D.D.C. 1999).  At the stage of litigation when dismissal is sought, a plaintiff's complaint must be construed liberally, and the plaintiff should receive the benefit of all favorable inferences that can be drawn from the alleged facts.  See St. Francis Xavier Parochial Sch., 117 F.3d at 624.

**B.     Discussion**

Plaintiff's claims of negligence and intentional infliction of emotional distress are tort claims, and the only possible jurisdictional basis for tort claims against a federal agency is the Federal Tort Claims Act ("FTCA").  See 28 U.S.C. §§ 1346(b) & 2671-80.  The FTCA "grants federal district courts jurisdiction over claims arising from certain torts committed by federal employees in the scope of their employment, and waives the government's sovereign immunity from such claims."  Sloan v. Dep't of Housing & Urban Dev., 236 F.3d 756, 759 (D.C. Cir. 2001).  The FTCA, however, "bars claimants from bringing suit in federal court until they have exhausted their administrative remedies."  McNeil v. United States, 508 U.S. 106, 113 (1993) (affirming the lower court's decision to dismiss an unexhausted FTCA claim for lack of jurisdiction).

Exhaustion under the FTCA occurs only after a claimant has (1) presented a federal agency with a claim describing, with particularity, the alleged injury and damages and (2) either

received a written denial of the claim from the agency or waited six months from the date of filing without obtaining a final agency disposition.  28 U.S.C. § 2675(a).  Failure to fully comply with these mandatory administrative steps deprives the Court of jurisdiction to hear a tort claim against the federal government.  Johnson v. Dimario, 14 F. Supp. 2d 107, 111 (D.D.C. 1998) (citing GAF Corp. v. United States, 818 F.2d 901, 904 & n.6 (D.C. Cir. 1987)).

There is no dispute here about the relevant jurisdictional facts -- that is, the extent of plaintiff's administrative pursuit of his tort claims.  The parties agree that plaintiff's only effort to raise the tort claim was a single, brief notation in his internal EEO complaint of reprisal discrimination in which plaintiff listed as one of his proposed remedies "compensation for humiliation, cost and attorney fees."  See Pl.'s Ex. 11.  That, however, falls far short of satisfying the prerequisites for this Court to exercise jurisdiction under the FTCA.  Plaintiff, who bears the burden of establishing jurisdiction, has patently failed to demonstrate that he took the necessary steps to exhaust his administrative remedies with regard to these tort claims.  Accordingly, the Court will grant defendant's motion to dismiss the tort claims.[5]

---

[5] Even if plaintiff's complaint did not suffer from this jurisdictional defect, defendant would, in all likelihood, be entitled to dismissal of the tort claims for failure to state a claim upon which relief can be granted.  The liability of the United States for FTCA claims is determined by the law of the place of the tort, see Garber v. United States, 578 F.2d 414, 415 (D.C. Cir. 1978), which in this case is the District of Columbia.  Under D.C. law, there can be no recovery for emotional distress resulting from negligence in the absence of physical impact.  See id.  Because plaintiff does not allege any physical impact, his two negligence claims would appear to be precluded.  With respect to his third tort claim, D.C. law does permit a plaintiff to recover damages for intentional infliction of emotional distress where there was no physical impact, so long as the plaintiff can show: "(1) extreme and outrageous conduct on the part of the defendant which (2) intentionally or recklessly (3) causes the plaintiff severe emotional distress."  See Howard University v. Best, 484 A.2d 958, 985 (D.C. 1984) (citations and internal quotations omitted).  Such a plaintiff also must "establish that ... [the] emotional disturbance [is] 'of so acute a nature that harmful physical consequences might not be unlikely to result.'"  Ridgewells Caterer, Inc. v. Nelson, 688 F. Supp. 760, 764 (D.D.C. 1988) (citations omitted).  In this regard,

**CONCLUSION**

For the foregoing reasons, the Court will grant defendant's motion to dismiss all claims.

A separate order has been issued herewith.

_____/s/ John D. Bates_____
JOHN D. BATES
United States District Judge

Dated:   __March 21, 2006__

Copies to:

Donna Williams Rucker
DUBOFF & ASSOCIATES
8401 Colesville Road, Suite 501
Silver Spring, MD  20910
Email: ruck92@aol.com

*Counsel for plaintiff*

Pamela D. Huff
Charlotte A. Abel
OFFICE OF THE U.S. ATTORNEY FOR THE DISTRICT OF COLUMBIA
555 4th Street, NW
Washington, DC  20530
Email: pamela.huff@usdoj.gov
Email: charlotte.abel@usdoj.gov

*Counsel for defendant*

---

plaintiff's claim of intentional infliction of emotional distress appears to suffer from a facial deficiency because he alleges neither the kind of extreme or outrageous conduct that would support such a claim nor the sort of serious emotional disturbance that the tort contemplates.